**Doris CLARKSON, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**Thomas A. COUGHLIN, III, individually and in his capacity as Commissioner of the State of New York, Department of Correctional Services, Robert Greifinger, individually and in his capacity as Deputy Commissioner and Chief Medical Officer of the New York State Department of Correctional Services, Marion Borum, individually and in his capacity as Deputy Commissioner for Program Services of the New York State Department of Correctional Services, Elaine A. Lord, individually and in her capacity as Superintendent of the Bedford Hills Correctional Facility, and Raul Russi, individually and in his capacity as Chair of the New York State Board of Parole and Head of the New York Division of Parole, Defendants.**

**Rodney THOMAS, Larry Randall, Janice Whan, Scott Cameron Phelps, and James White, individually and on behalf of others similarly situated, Proposed–Plaintiffs–Intervenors,**

v.

**Victor HERBERT, individually and in his capacity as Superintendent of the Collins Correctional Facility, Walter Kelly, individually and in his capacity as Superintendent of the Attica Correctional Facility, Bridget Gladwin, individually**

transfer any civil action to any other district or division where it might have been brought.

and in her capacity as Superintendent of the Taconic Correctional Facility, Arthur Leonardo, individually and in his capacity as Superintendent of the Great Meadow Correctional Facility, Carl Berry, individually and in his capacity as Superintendent of the Woodbourne Correctional Facility, Richard C. Surles, individually and in his capacity as Commissioner of the New York State Office of Mental Health, and Susan Butler, individually and in her capacity as Deputy Commissioner for Program Services of the New York State Department of Correctional Services, Proposed–Defendants.

No. 91 Civ. 1792 (RWS).

United States District Court,
S.D. New York.

Feb. 3, 1992.

The Legal Aid Society, Civil Appeals & Law Reform Unit, New York City (Kalman Finkel, Atty. in Charge, Janet E. Sabel, Jane E. Booth, Director of Litigation, of counsel), and Proskauer, Rose, Goetz & Mendelsohn, New York City (Teresa A. Curtin, of counsel), for plaintiffs.

Robert Abrams, Atty. Gen. of State of N.Y., New York City (Frederic L. Lieberman, Rosalie J. Hronsky, Edward J. Curtis, Jr., Asst. Attys. Gen., of counsel), for defendants Coughlin, Greifinger, Lord and Russi.

## OPINION

SWEET, District Judge.

Defendants Thomas A. Coughlin, III ("Coughlin"), Robert Greifinger ("Greifinger"), Marion Borum ("Borum"), Elaine A. Lord ("Lord"), and Raul Russi ("Russi") (collectively the "Defendants") have moved to dismiss Plaintiff Doris Clarkson's ("Clarkson") complaint against them on the ground that the action is moot. Defendant Lord also has moved separately for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that she is not a proper defendant to this action. In the alternative, the Defendants seek to transfer this action to the Northern District of New York pursuant to 28 U.S.C. § 1404(a).

Rodney Thomas ("Thomas"), Larry Randall ("Randall"), Janice Whan ("Whan"), Scott Cameron Phelps ("Phelps"), and James White ("White") (collectively the "Intervenors") have moved to intervene as plaintiffs in this action pursuant to Rule 24(b) of the Federal Rules of Civil Procedure, and to join Victor Herbert ("Herbert"), Walter Kelly ("Kelly"), Bridget Gladwin ("Gladwin"), Arthur Leonardo ("Leonardo"), Carol Berry ("Berry"), Richard C. Surles ("Surles"), and Susan Butler ("Butler") (collectively the "Proposed Defendants") as defendants pursuant to Rule 19(a) or Rule 20(a). Additionally, the Intervenors seek class certification pursuant to Rule 23.

For the reasons set forth below, the Defendants' motion to dismiss the class complaint is denied. Clarkson's personal claims are dismissed as moot, while Whan's motion to intervene is granted. The other motions to intervene are denied at this time, with leave granted to renew. Surles, Butler, and Gladwin are joined as defendants pursuant to Rule 20(a). The motion to certify the proposed class is denied, with leave granted to renew the motion at a later date. Lord's motion for summary judgment and the motion to transfer the case to the Northern District of New York are denied.

### The Parties

The Defendants and the Proposed Defendants are either officials of the New York State Department of Correctional Services ("DOCS") or of State organizations providing corrections-related services. Coughlin is the Commissioner of DOCS, Greifinger is its Chief Medical Officer and a Deputy Commissioner, and Butler is the Deputy Commissioner of Program Services.[1] Lord, Herbert, Kelly, Gladwin, Leonardo, and Berry are Superintendents of DOCS facilities. Russi is the Chair of the New York State Board of Parole and Head of the New York State Division of Parole, and Surles is the Commissioner of the New York State Office of Mental Health. Relief is sought from each in their individual and official capacities.

Clarkson is deaf. Until recently, she was incarcerated at the Bedford Hills Correctional Facility in New York State. She has been unable to hear since early childhood and "speaks" with others primarily through the American Sign Language. Clarkson can understand little, if any, Signed English, and apparently cannot lip-

---

**1.** Service never was perfected upon Borum. *See* Memorandum in Support of Plaintiffs' Motion 18 (July 29, 1991). The complaint against Borum is therefore dismissed.

read.[2] To communicate with people who can hear, Clarkson uses various auxiliary aids and assistive devices.

Clarkson's term of incarceration at Bedford Hills began in 1988. During her time there, she alleges that she never had access to an interpreter conversant in American Sign Language. Bedford Hills also lacks the basic assistive devices upon which hearing-impaired people often rely. These devices include telephone communication devices for the deaf ("TDD"), which allow hearing-impaired persons to communicate over the phone directly with others or through a third-party relay service; close-captioned devices, which provide subtitles for television or films; and visual alarms and signals. Clarkson was provided with hearing aids while at Bedford Hills. These aids were of limited efficacy, though, given the extent and duration of Clarkson's hearing loss.

Clarkson's experience at Bedford Hills can be described best as "a prison within a prison." Eastern New York Correctional Facility, *Sensorially Disabled Unit Operations & Procedures Manual* 1 (Sept.1989) [hereinafter *"SDU Manual"*]. Rarely was she fully aware of what was going on around her. The record indicates, for example, that Clarkson underwent HIV testing without her knowledge and that she received and took medicine without knowing why. Her ability to participate in educational training programs was limited; she could not take advantage of group counseling; and she did not enjoy the same telephone and television privileges as did inmates who are not hearing-impaired. These and other alleged deprivations apparently were caused in part by the Defendants' failure to provide Clarkson with the communicative tools necessary for her to function fully in the prison environment (as required by law, *see, e.g.,* N.Y.Correct.Law §§ 136–139; 7 N.Y.C.R.R. pts. 200, 700; 9 N.Y.C.R.R. § 7695.4).

Because of her hearing loss, Clarkson also alleges that she was deprived of her procedural due process rights. The rules and regulations of prison life were never properly conveyed to her at intake. Without a qualified interpreter, she was not capable of defending herself in disciplinary proceedings nor exercising her right to grievance, transfer, good time, and change of status procedures. Injunctive relief is sought to remedy these alleged deprivations pursuant to the Eight, Ninth, and Fourteenth Amendments to the United States Constitution, § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and 42 U.S.C. § 1983.

DOCS does have a facility that would have provided Clarkson with the relief sought here. It is, however, located at DOCS's Eastern Correctional Facility and serves only male inmates. Known as the Sensorially Disabled Unit ("SDU"), this facility was established by DOCS to provide resources for hearing-impaired inmates that were unavailable previously. See *SDU Manual,* supra, at 6. The SDU apparently can handle only 30 hearing-impaired inmates at a time,[3] and there may be male inmates within the DOCS system who are eligible for or desire a transfer to the SDU, but cannot be readily accommodated.

Like Clarkson, the Intervenors allege that they are all hearing-disabled. Thomas is incarcerated at the Auburn Correctional Facility. Allegedly deaf since birth, he cannot read or write English well and communicates primarily through American Sign Language. At the time of oral argument, he was scheduled to go to the SDU, but had not been transferred there yet. Thomas apparently was enrolled in the SDU previously, but was transferred out so that he could receive mental health treatment not available at the Eastern Facility.

Randall is incarcerated at the Attica Correctional Facility. His medical condition is

---

**2.** Signed English and American Sign Language are quite distinct. Signed English is primarily paraphrased English, with each spoken word accorded a corresponding "sign." American Sign Language is a language unto itself, with its own formal lexical, grammatical, and syntactic structures. *See* Applegate Affidavit 2.

**3.** The SDU also provides services for inmates who are sight-impaired.

vigorously contested. He allegedly suffers from a hereditary loss of hearing. As a result, he apparently needs two hearing aids, yet has none, and cannot read lips well nor understand either form of sign language. Randall currently is not participating in any educational or recreational programs offered at Attica. The Defendants contend that Randall is not cooperating with their efforts to evaluate his hearing ability.

Whan is incarcerated at the Taconic Correctional Facility. She allegedly suffers from congenital, degenerative hearing loss. On October 24, 1991, she apparently received a pair of hearing aids that she had requested in December 1990. She follows conversations primarily by reading lips, with some reliance placed on her limited hearing ability. Whan seeks tutoring in American Signed Language, a closed-caption television decoder, and an amplified telephone handset or TDD.

Phelps is incarcerated at the Great Meadows Correctional Facility. He allegedly is hearing-impaired and relies on hearing aids, lip reading, and writing to communicate. As of oral argument, it seemed that he had been transferred to the SDU.

White is incarcerated at the Woodbourne Correctional Facility. He alleges that he has recently suffered a dramatic loss in hearing. The Defendants contend that they are unable to verify the degree of his loss, if any. Nevertheless, he has been scheduled for, and presumably sent to, the SDU.

---

**4.** The Defendants actually term their primary motion as one for summary judgment. However, the proper procedure to follow when a case has become moot or a plaintiff lacks standing is to dismiss the case, not grant summary judgment. *See, e.g., United States v. Munsingwear, Inc.,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950). Since the parties have briefed the underlying issues fully, there is no prejudice, and the Defendants' motion for summary judgment will treated as a motion to dismiss.

**5.** The Defendants originally argued that Clarkson also lacked standing to bring this action, relying on *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). They

*Prior Proceedings*

Clarkson initiated this action by filing a Class Action Complaint on March 15, 1991. On March 26, 1991, she brought an Order to Show Cause seeking access to the requested services, a purging of all disciplinary charges from her record, credit for the time to which she would have been entitled had she participated in prison activities, the promulgation of rules and procedures designed to protect the rights and privileges of other hearing-impaired inmates, and the development of a plan ensuring that all Bedford Hills staff working with her knew of her special needs.

Clarkson was paroled on June 14, 1991. That day, the Defendants served their present motions for dismissal and transfer.[4] The Intervenors filed their motion for intervention and class certification on August 9, 1991. Oral argument on the motions was heard on December 19, 1991, and the motions considered submitted as of that date.

*Discussion*

I. Mootness

■ As a threshold matter, the Defendants contend that the entire suit should be dismissed because the claims brought by Clarkson are moot.[5] Clarkson argues that her personal claims are not moot because she may be reincarcerated if she violates her parole and that even if her personal claims are moot, the class complaint should not be dismissed.

Once the conduct of which a prisoner complains is no longer directed at that pris-

---

withdrew this contention after Clarkson correctly pointed out that when performing a standing analysis, a court "must look to the facts and circumstances as they existed at the time th[e] suit was initiated." *Etuk v. Slattery,* 936 F.2d 1433, 1440–41 (2d Cir.1991). Since there is no dispute that Clarkson meets this standard, *see* Defendants' Reply Memorandum of Law 3 (Dec. 17, 1991), the argument based on *Lyons* will not be addressed.

The Defendants also raise objections to Clarkson's standing to assert the claims of other inmates in their Reply Memorandum. These contentions, however, are more properly addressed to whether Clarkson is a proper class representative.

oner, a prisoner's personal claim for injunctive relief from that conduct is moot. For example, in *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (per curiam), the Second Circuit held that the plaintiff's claim for injunctive relief from solitary confinement was moot because the period of confinement had lapsed. The plaintiff could still pursue his claim for lost good time credits, however. Likewise, in *Beyah v. Coughlin*, 789 F.2d 986, 988–89 (2d Cir. 1986), the Court of Appeals held that the plaintiff's complaint directed at allegedly unconstitutional practices at a particular institution was moot to the extent it sought declaratory and injunctive relief once the plaintiff was transferred to a different institution. *See also Lucas v. Hodges*, 730 F.2d 1493, 1497 & n. 10 (D.C.Cir.), *vacated as moot*, 738 F.2d 1392 (1984).

Clarkson was paroled three months after she filed this action. Neither damages nor compensation are sought for the injuries she allegedly suffered while incarcerated at Bedford Hills. The Complaint seeks a declaration that DOCS's current treatment of deaf and hearing-impaired inmates is unlawful, and a injunction against the Defendants ordering them to provide the requested services. To the extent Clarkson seeks such relief for herself, her claims are moot.

■ This does not mean, however, that this action should be dismissed. Under the more "flexible" approach applied to class claims, the complaint itself is not rendered moot merely because the named plaintiff's claim is moot. *See County of Riverside v. McLaughlin*, — U.S. —, —, 111 S.Ct. 1661, 1667, 114 L.Ed.2d 49 (1991); *United States Parole Commission v. Geraghty*, 445 U.S. 388, 400, 100 S.Ct. 1202, 1210, 63 L.Ed.2d 479 (1980); *Etuk v. Slattery*, 936 F.2d 1433, 1441 (2d Cir.1991); *Washington v. Wyman*, 54 F.R.D. 266, 270–71 (S.D.N.Y. 1971). From the time a class action is filed until the time a final determination pursuant to Rule 23 is made, the action is treated as if the class existed for purposes of mootness. *See McLaughlin*, — U.S. at —, 111 S.Ct. at 1167; *Geraghty*, 445 U.S. at 404, 100 S.Ct. at 1212. This provides un-

named members of the plaintiff class an opportunity to intervene in the action and to pursue their claims. Here, intervention is sought, indicating the strong likelihood that some other named plaintiff exists who will be able to represent the putative class adequately. *See also Jane B. v. New York City Department of Social Services*, 117 F.R.D. 64, 66–69 (S.D.N.Y.1987).

The Defendants rely on *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam), and *Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975), in pressing their argument that the case is moot because Clarkson has been paroled. Both are readily distinguishable, though, because neither one of the cases was a class action. *See Weinstein*, 423 U.S. at 149, 96 S.Ct. at 348; *Preiser*, 422 U.S. at 404, 95 S.Ct. at 2335 (Marshall, J., concurring). A more stringent mootness analysis, not applicable to the present action, was applied in those cases. The Defendants' motion to dismiss the action as moot is therefore denied.

## II. Intervention

Intervention is sought pursuant to Rule 24(b)(2) of the Federal Rules of Civil Procedure. The Rule provides that "[u]pon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common." Ultimately, whether to allow a party to intervene is within the discretion of the district court. *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978); *Cook v. Pan American World Airways, Inc.*, 636 F.Supp. 693, 698 (S.D.N.Y.1986).

This litigation is in its initial stages, so that the intervenors' motion is timely. The critical issue is which of the Intervenors, if any, have potential claims with questions of law or fact in common with Clarkson.

### A. *Thomas, Phelps, and White*

■ At oral argument, the Court was informed that Thomas was awaiting transfer to the Eastern Facility for enrollment in the SDU and that Phelps and White were there already. SDU inmates were explicit-

ly omitted from the proposed class definition since they presumably will receive the relief requested. The motion by Thomas, Phelps, and White to intervene is therefore denied as they do not have a question of law or fact in common with Clarkson at this time.

The Intervenors objected to this result at oral argument on the grounds that DOCS was playing a "shell game" with them in an attempt to moot their claims. In particular, they pointed to Thomas's experience. Thomas was enrolled in the SDU previously, but was transferred out after several run-ins with other SDU inmates. He apparently suffers from mental health problems for which treatment is not available at the Eastern Facility. However, this "shell game" has not been alleged in either Clarkson's complaint or the Proposed Intervenor Complaint, and evidence of it in the present record is lacking. Leave is therefore granted to amend the complaint to include such allegations and to move again for intervention upon a more definite showing.

### B. *Randall*

■ Randall apparently has not cooperated with DOCS's efforts to diagnose the extent of his hearing loss. This behavior is contrary to his normal efforts to obtain medical care. Without Randall's cooperation, DOCS cannot determine whether he is eligible for the SDU. Until a more certain diagnosis is available, it is not clear that Randall has a question of fact, and hence a question of law, in common with Clarkson. His motion for permissive intervention is denied at this time as well.

### C. *Whan*

■ Whan, like Clarkson, is a female inmate. She thus is ineligible for the SDU. Although her loss of hearing is not as severe as Clarkson's, and she has been outfitted with hearing aids, her situation does present the same questions of law. The facility at which she is incarcerated provides none of the facilities or services sought. She also has come close to being written-up for violating institutional rules because she could not hear the instructions given by correctional officers. While it is true that there are factual differences between Clarkson's and Whan's experiences, the underlying legal issues remain the same. Whan's motion to intervene is therefore granted. *See Brooks v. Flagg Brothers, Inc.,* 63 F.R.D. 409, 414 (S.D.N.Y.1974).

### III. Joinder

The Intervenors also seek to add Herbert, Kelly, Gladwin, Leonardo, Berry, Surles, and Butler as additional defendants pursuant to Rule 19 or Rule 20 of the Federal Rules of Civil Procedure.

Rule 20(a) provides that:

All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A ... defendant need not be interested in obtaining or defending against all the relief demanded.

Fed.R.Civ.P. 20(a). The Proposed Defendants argue that no compelling reason for bringing them into this action exists and that all the relief sought can be obtained through Coughlin.

■ Butler is the current DOCS Deputy Commissioner for Program Services, having replaced Borum in June 1991. She is responsible for delivering program services to DOCS inmates. To the extent that Coughlin has delegated such duties to Butler, she may be a person through whom the requested relief can be achieved. There is a sufficient enough nexus between her duties and the questions of law involved to justify joining Butler in this action.

■ DOCS has an obligation to provide mental health treatment and services to inmates. *See* N.Y.Correct.Law § 401. The Office of Mental Health generally provides such services for DOCS. *See Langley v. Coughlin,* 709 F.Supp. 482, 484 (S.D.N.Y.), *appeal dismissed,* 888 F.2d 252 (2d Cir. 1989); *Langley v. Coughlin,* 715 F.Supp. 522, 545–46 (S.D.N.Y.1989). In her affida-

vit, Whan states that she has difficulty participating in group counselling. Although not clear from the present record, Surles may be responsible for providing the relief requested also. Joinder of Surles as a defendant pursuant to Rule 20(a) is therefore proper.

As to the remaining Proposed Defendants, they are the superintendents of the institutions where the Intervenors are or were incarcerated. In light of the above denial of the motions to intervene by Thomas, Randall, Phelps, and White, the motion to join Herbert, Kelly, Leonardo, and Berry as defendants is denied. No plaintiff is currently incarcerated at the facilities over which they preside. There is therefore an insufficient nexus between them and the relief requested by Clarkson or Whan to justify adding them as defendants at this time.

■ Gladwin, however, is the Superintendent of the Taconic Correctional Facility, where Whan is incarcerated. "Both the conditions of confinement and the quality of medical care rendered within the prison are matters within the responsibility of the Superintendent...." *Langley*, 715 F.Supp. at 548; *see also Wright v. McMann*, 460 F.2d 126, 134–35 (2d Cir.), *cert. denied*, 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972). It therefore is appropriate to allow Gladwin to be joined as a defendant.

The Defendants argue generally that there is no compelling reason to join these officials as defendants because relief may be obtained through Coughlin. Joinder is sought pursuant to both Rules 19 and 20, however. Although Clarkson may have overall authority over DOCS, the responsibility for certain activities relevant to this action has been delegated to the other defendants. There thus exists a sufficient enough nexus between Butler's, Surles's, and Gladwin's activities and the relief sought to justify adding them as defendants under Rule 20's more relaxed approach. *See Vulcan Society v. Fire Department*, 82 F.R.D. 379, 388 (S.D.N.Y. 1979).

IV. Class Certification

■ Whan seeks an order pursuant to Rule 23(b)(1) or Rule 23(b)(2) of the Federal Rules of Civil Procedure certifying this action as a class on behalf of all those

present and future deaf and hearing-impaired inmates of the New York State Department of Correctional Services who have been, are, or will be discriminated against, solely on the basis of their disability, in receiving the rights and privileges accorded to all other inmates.

The proposed class would not include those inmates housed at the SDU. Proposed Complaint ¶ 11. The Defendants contend that none of the four prerequisites to certification required by Rule 23 has been met.

Rule 23(a) provides that:

[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If these prerequisites are not met, an action may not be maintained as a class. Fed.R.Civ.P. 23(b).

The class action device is particularly well-suited in actions brought by prisoners due to the "fluid composition" of the prison population. *Dean v. Coughlin*, 107 F.R.D. 331, 332 (S.D.N.Y.1985). Prisoners frequently come and go from institutions for a variety of reasons. Veteran prisoners are released or transferred, while new prisoners arrive every day. Nevertheless, the underlying claims tend to remain. *Id.* at 332–33. Class actions therefore generally tend to be the norm in actions such as this. *See Jones v. Smith*, 784 F.2d 149, 151 (2d Cir.1986); *see also Loper v. New York City Police Department*, 135 F.R.D. 81, 83 (S.D.N.Y.1991).

In support of the motion for class certification, the Intervenors have submitted a DOCS report prepared in October 1990 en-

titled "Inmates with Sensorial Extended Class Code" (the "Report"). The Report was obtained through a New York State Freedom of Information request and lists some 48–50 inmates who allegedly were deaf or hearing-impaired as of that date.[6] Twelve of these inmates were at the Eastern Facility, and presumably the SDU, when the Report was produced. Significantly, the Report lists only male inmates; it provides no data on female inmates.[7]

▓▓▓ The class definition sought is expansive, covering both male and female inmates who are not incarcerated at the SDU. Yet the form of relief that a person is entitled to may well depend on that person's gender. A male inmate's needs may be satisfied by a transfer to the SDU assuming that there is sufficient space available for the transfer to take place. This remedy is not available for a female inmate. Instead, her needs cannot be satisfied without further institutional changes on DOCS's behalf. Inmates of both genders do, though, share common relief goals, such as ensuring that assistive personnel and devices are available at intake. In light of the different forms of relief that apply, if this action does proceed as a class, there should be two sub-classes of plaintiffs. One sub-class should represent all those present and future male inmates who are hearing-impaired or deaf and who are not incarcerated at the SDU. The other sub-class should represent all those present and future female inmates who are hearing-impaired or deaf.

As set forth above, the motions of the four male inmates who sought to intervene in this action were denied at this juncture. Three of these inmates had been or were about to be transferred into the SDU, while the extent of the other's disability could not be determined. None of these inmates is in a position to represent the putative sub-class of male inmates adequately. Certification of such a class thus is not appropriate now, although leave is granted to

renew this motion once an adequate representative has intervened.

▓▓▓ Whan has not yet established that there are any other female inmates in DOCS besides herself who suffer from a hearing disability. Even though there is no magic minimum number that breathes life into a class, see Bruce v. Christian, 113 F.R.D. 554, 556 (S.D.N.Y.1986), and lack of knowledge of the exact number of persons affected is not a bar to certification where the defendants alone have access to such data, see McNeill v. New York City Housing Authority, 719 F.Supp. 233, 252 (S.D.N.Y.1989); Folsom v. Blum, 87 F.R.D. 443, 445 (S.D.N.Y.1980), there must be something within the record from which it can be inferred that a class does exist.

Whan argues that this inference can be drawn from the DOCS Report showing that there were at least forty-eight male inmates in DOCS's custody in November 1990. While this report would satisfy the numerosity requirement for the sub-class of male inmates, no inference can be drawn from it concerning female inmates.

Whan also contends that the number of hearing-impaired or deaf female inmates is information within Defendants' control and that DOCS has refused to produce such information. Lewis v. Gross, 663 F.Supp. 1164, 1169 (E.D.N.Y.1986); Folsom, 87 F.R.D. at 445; see Defendants' Response, no. 3 (May 29, 1991). In both Lewis and Folsom, classes were certified where the exact number of class members could not be determined by the plaintiffs because the pertinent information was within the defendants' control. However, a rough estimate of the class size could be made in both instances. See Lewis, 663 F.Supp. at 1169 (over 2000 members, as estimated by plaintiff); Folsom, 87 F.R.D. at 445 (membership in the "hundreds," as estimated by court). Here, there are no data offered from which the size of the putative class of current female inmates can be estimated.

---

6. The Defendants contend that the report lists inmates who may be deaf or hearing-impaired.

7. The Intervenors also note that listings for Thomas, Randall, and Phelps do not appear on

the Report, thus suggesting that it is under-inclusive as to male inmates as well. See Sabel Affidavit ¶ 17.

Whan's motion to certify is therefore denied at this juncture, with leave granted to renew in the future.

## V. Defendant Lord

■ Defendant Lord has moved to dismiss the claims against her on two grounds. First, she argues that she is not a proper party to this lawsuit because she has no extraordinary responsibility for designing or implementing correction policies. Second, Lord argues that since Clarkson has been paroled, there is no named plaintiff incarcerated at the institution over which she is the Superintendent.

The first argument is essentially the same as that made by Gladwin in opposing the motion to join her as a defendant. For the reasons set forth above, this argument is rejected. *See also Langley,* 715 F.Supp. at 548.

Lord's second argument fails at this stage as well. In a typical action, it probably would be correct to dismiss Lord from the case since Clarkson's personal claims against her are moot and no other plaintiff has asserted a claim against her. But this is a class action brought by a prisoner on behalf of herself and other similarly situated prisoners. For principally the same reasons why the case as a whole is not moot, it would be improper to dismiss Lord.

A prisoner's length of stay at a particular prison or within a prison system is "inherently transitory and cannot be determined from the outset." *Jane B.,* 117 F.R.D. at 68. Prisoner plaintiffs' "interest in averting the possibility of the action becoming moot, with the concomitant interest in judicial economy, makes class certification ... more than an empty formality." *Alston v. Coughlin,* 109 F.R.D. 609, 612 (S.D.N.Y.1986); *see also Dean, 107 F.R.D. at 332 (noting the "fluid composition" of prison populations in granting class certification).*

Although a class has not been certified yet, it appears that the underlying controversy for which Clarkson sought relief is very much alive. The class Clarkson sought to represent invariably included deaf or hearing-impaired inmates imprisoned at Bedford Hills. While there presently is insufficient evidence in the record upon which to certify the class, *see supra,* there also is insufficient evidence in the record refuting its existence. Furthermore, Whan alleges that before she was transferred to Taconic, she was incarcerated at Bedford Hills. *See* Proposed Intervenor Complaint ¶ 67. She too was presumably denied the relief presently sought while there, as was Clarkson, and is eligible for transfer back to Bedford Hills. This raises the specter of successive motions for dismissal and joinder and of an attempt by the Defendants to evade review. The nature of this case and interests of judicial economy therefore call for denying Lord's motion to dismiss until a dispositive decision denying class certification is made, if at all. *Cf. Sosna v. Iowa,* 419 U.S. 393, 401, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975).

## VI. Venue Transfer

■ The Defendants also seek to transfer this action to the Northern District of New York. The venue statute, 28 U.S.C. § 1404(a), provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In *Don King Productions, Inc. v. Douglas,* 735 F.Supp. 522 (S.D.N.Y.1990), the several factors to consider when deciding a motion for a change of venue were set forth: (1) the place where the operative facts occurred; (2) the convenience to parties; (3) the convenience of witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice. *Id.* at 533 (citing cases). Moreover, the moving party must make a clear showing to justify a change of venue. *Id.*

The Defendants contend that the Northern District of New York is more appropriate because some of the Defendants are

**800**

State officials whose place of business is in Albany, witnesses with knowledge about the relevant policies "most likely" will reside there, records will be more easily obtained there, and a trial will be less expensive if held there. This must, of course, be counter-balanced against the "great weight" to which a plaintiff's choice of forum is entitled. *See Eastern Refractories Co. v. Forty Eight Insulations, Inc.,* 668 F.Supp. 183, 187 (S.D.N.Y.1987).

When she filed this action, Clarkson was incarcerated at Bedford Hills, while Whan is incarcerated at Taconic. Both institutions are located within the Southern District of New York. They therefore were entitled to bring this action in the Southern District of New York, *Tunin v. Ward,* 78 F.R.D. 59, 61 (S.D.N.Y.1977), and many of the facts of which they complain occurred here. Defendants Lord and Gladwin have their principal places of business in the Southern District. As to the other Defendants, "[i]t is not overly burdensome for state officials to travel to New York [City]." *Sharif v. New York State Education Department,* 709 F.Supp. 345, 358 (S.D.N.Y.1989). Convenience to the parties and witnesses, and the ease of access to the proof therefore weigh in favor of the Southern District of New York.

Availability of process and the forum's familiarity with the governing law certainly do not tip the balance in favor of the Northern District. As to trial efficiency and the interests of justice, the Defendants have not put forth an argument that would compel a transfer. *See Pinto v. Doskocil,* 91 Civ. 1518, slip op. at 22, 1991 WL 207523 (S.D.N.Y. Oct. 2, 1991); *Gibbs & Hill, Inc. v. Harbert International, Inc.,* 745 F.Supp. 993, 997 (S.D.N.Y.1990).

A plaintiff's choice of forum is entitled to even greater deference when the plaintiff has chosen the home forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981). The Defendants have simply failed to adduce the kind of evidence required to meet their heavy burden for this action to be transferred. Their motion to transfer this action to the Northern District of New York is therefore denied. *Tunin,* 78 F.R.D. at 61.

*Conclusion*

For the reasons set forth above, the Defendants' motion to dismiss the class complaint as moot is denied. Clarkson's personal claims against the Defendants are dismissed as moot. Whan's motion to intervene in the action is granted, while the motion by Thomas, Randall, Phelps, and White is denied with leave granted to renew. The motion to join Butler, Surles, and Gladwin is granted. The motion to join the other Proposed Defendants is denied with leave granted to renew. Whan's motion to certify the proposed class is denied at this time with leave granted to renew. Defendant Lord's motion for summary judgment and the Defendants' motion to transfer the action are denied.

It is so ordered.