Doris **CLARKSON** and Janice Whan, individually and on behalf of others similarly situated, Plaintiffs,

and

Mark Brock, et al., individually and on behalf of others similarly situated, Proposed–Plaintiff Intervenors,

v.

Thomas A. **COUGHLIN**, III, et al., Defendants.

and

Stephen Dalshein, et al., Proposed Defendant.

No. 91 Civ. 1792 (RWS).

United States District Court, S.D. New York.

Jan. 25, 1993.

---

The Legal Aid Soc., New York City (Kalman Finkel, Attorney-in-Charge, Jane E. Booth, Director of Litigation, Civil Appeals & Law Reform Unit, Janet E. Sabel, of counsel), Proskauer, Rose, Goetz & Mendelsohn, New York City (Teresa A. Curtin, of counsel), for plaintiffs.

Robert Abrams, Atty. Gen. of State of N.Y., New York City (Frederic L. Lieberman, Rosalie J. Hronsky, Edward J. Curtis, Jr., Asst. Attys. Gen., of counsel), for defendants.

## OPINION

SWEET, District Judge.

Proposed plaintiff-intervenors Mark Brock ("Brock"), Terryton Harrison ("Harrison"), Riis Powell ("Powell"), and Glennis Robertson ("Robertson")[1] (collectively, the

---

1. Robertson's correct name is Glennis Robin- son, but it appears that, because of her hearing

"Intervenors") have moved to intervene as plaintiffs in this action pursuant to Rule 24(b)(2), Fed.R.Civ.P. The Intervenors and Plaintiffs move to join Stephen Dalsheim ("Dalsheim") and Mr. Senkowski ("Senkowski") as a party defendants in this action pursuant to Rule 19(a) and 20(a), Fed.R.Civ. P,[2] and for an order certifying this action as a class action pursuant to Rule 23, Fed. R.Civ.P. Finally, the Plaintiffs have moved for leave to amend the original Class Action Complaint ("Original Complaint") to include claims under the Americans With Disabilities Act, 42 U.S.C. §§ 12131–33 ("ADA").

For the reasons set forth below the motions of the Plaintiffs and Intervenors are granted.

*Parties*

## I. Defendants

The Defendants are either officials of the New York State Department of Correctional Services ("DOCS") or of State organizations providing corrections-related services, and they are described in this Court's opinion of February 3, 1992 in this action, familiarity with which is assumed. *See Clarkson v. Coughlin*, 783 F.Supp. 789, 792 (S.D.N.Y.1992) (the "Opinion"). Proposed defendant Dalsheim is the Superintendent of the Downstate Correctional Facility ("Downstate"), a DOCS facility located in Fishkill, New York,[3] and proposed defendant Senkowski is the Superintendent of the Clinton Correctional Facility ("Clinton"), a DOCS facility located in Dannemora, New York.

## II. Plaintiffs

Janice Wahn ("Wahn") was added as a Plaintiff to this action on the previous motion for intervention by a group of proposed plaintiffs. She is described more fully in the Opinion. *See id.* at 794, 796. Following the dismissal of Doris Clarkson's ("Clarkson") claims against the Defendants as described in the Opinion, *id.* at 795, Wahn became the lone named Plaintiff and representative of the putative class alleged in the Original Complaint (collectively, the "Plaintiffs").

## III. Intervenors

The Intervenors are presently incarcerated in DOCS facilities, and each is deaf or severely hearing-impaired.

### A. *Brock*

Brock alleges that he has been deaf since birth, and that American Sign Language ("ASL") is his primary method of communication. He does not read or write English very well, nor can he lipread well, and his speech is not understood by hearing people. He requires the assistance of a qualified sign language interpreter to make himself properly understood.[4]

Brock has been incarcerated in Downstate since November 1991, and from 1986 to 1988, he was assigned to the Eastern Correctional Facility ("Eastern") in the Sensorially Disabled Unit ("SDU") for deaf and hearing-impaired inmates.[5] As a transitional facility, Downstate does not offer inmates educational or vocational programs, and the few programs, services,

---

disability and her inability to make herself understood to those processing her at the time of her arrest, she was incorrectly identified as "Glennis Robertson" on her arrest record.

**2.** In their Memorandum of Further Support of Plaintiffs' Motion, the Intervenors implicitly amended their Notice of Motion to move for an order joining Senkowski as a defendant. This amendment was precipitated by the removal of one of the Intervenors, Harrison, to that facility after the Notice of Motion was filed. In light of the fact that the Defendants had the opportunity to respond to this amendment at oral argument, the Court will consider this motion along with considering the joinder of Dalsheim.

**3.** Downstate is an intake and classification facility where male inmates are placed pending classification and assignment to a long term facility.

**4.** A qualified sign language interpreter is one who has obtained certification from the National Registry of Interpreters for the Deaf, and who is "able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary." 28 C.R.F. § 35.104.

**5.** As was noted in the Opinion, Eastern's SDU can accommodate only 30 hearing-impaired inmates at a time. *See* 783 F.Supp. at 793.

and privileges the facility does offer are not available to deaf inmates such as Brock. In addition, Downstate has neither a telephone communication device for the deaf ("TDD") nor closed caption decoders for the televisions nor a flashing announcement and alarm system to inform Brock and other deaf inmates of emergencies or announcements.

As a result, Brock has been unable to do any of the following at Downstate: participate in DOCS programs, including an Alcoholics Anonymous ("AA") counseling program (participation in which is relevant to his eligibility for parole); communicate with doctors and nurses about his physical condition; make telephone calls; and watch television. Further, he misses morning count and is at risk of harm because of his inability to hear the public announcement system and the fire alarm.

Brock has been disciplined a number of times over the years, including once for failure to obey an order he did not hear. He also was sent from Eastern to the Auburn Correctional Facility ("Auburn") for several months for punishment or security reasons. At Auburn, a disciplinary proceeding was held, but Brock was not provided with the services of a qualified sign language interpreter or with other auxiliary aids or devices in preparing for the proceeding or during the proceeding itself. At Downstate, Brock's counselor assisted him at a disciplinary proceeding, but because she was not fluent in ASL, Brock could not make himself understood through her to those before whom he was appearing.

Brock alleges that he has been advised that he will not be transferred back to the SDU from Downstate but rather will be sent to a minimum security prison.

### B. *Harrison*

Harrison is deaf and communicates primarily in ASL. He cannot lipread well, and his speech is not understood by hearing persons. He is presently incarcerated at the Clinton Correctional Facility ("Clinton") in Dannemora, New York.

From 1985 to 1987, Harrison was housed at DOCS' Elmira Correctional Facility ("Elmira") and Eastern's SDU. For security reasons, Harrison was transferred from the SDU to the Attica Correctional Facility ("Attica"). At no DOCS facility, other than SDU, was Harrison provided with access to qualified sign language interpreters or other services he required to participate in prison programs and activities. Harrison alleges that, at Attica, he was denied access to all programs and services because of his deafness and stayed in his cell twenty-four hours a day.

Harrison was transferred from Attica to Downstate and then to Clinton. He alleges that he was told he would not be sent back to Eastern's SDU for security reasons. Like Brock, Harrison has gone through a series of disciplinary proceedings without the assistance of anyone with whom he could communicate adequately and who could serve as an intermediary through whom he could communicate with others. He alleges that he received fifteen days in "keep lock" at Attica after a disciplinary hearing in which he was not provided with an interpreter, and he also met with parole officers at Attica and Elmira without the assistance of an interpreter.

### C. *Powell*

Powell is a deaf inmate who, until recently, had been housed at Downstate. On the record before the Court there is some confusion as to Powell's present location. The Intervenors' counsel contends that it was informed by letter dated May 19, 1992 from DOCS that Powell was transferred to Eastern SDU, a transfer which DOCS computers indicate occurred on February 2, 1992. However, Powell's affidavit in support of this motion indicates that he was still at Downstate as of May 7, 1991. The Intervenors' counsel has not been able to establish that Powell was actually transferred to Eastern because of communication difficulties, including the lack of TDD equipment and a qualified interpreter.

It is alleged that Powell has been totally deaf from birth and has virtually no residual hearing or ability to speak and only a

limited ability to communicate in written English. Although Powell's counselor at Downstate knows some signs, she does not understand his native ASL. Consequently, on the few occasions when the counselor has assisted Powell in disciplinary proceedings, he has not been able to express himself adequately through her. Powell has also enrolled in Downstate's AA program, but because there is no qualified sign interpreter, he has been unable to participate in it.

### D. *Robertson*

Robertson has been severely hearing-impaired from birth and is currently an inmate at DOCS' Bedford Hills Correctional Facility ("Bedford Hills"). While she has limited residual hearing in one ear with hearing aids, she relies on ASL and signed English to communicate with others. Her inability to lipread prevents her from communicating with hearing persons by lipreading alone.

Robertson was transferred to Bedford Hills from DOCS' Groveland facility following a disciplinary hearing in which she was not provided with an interpreter, and as a result of which her privileges were severely curtailed for a three-month period of time.

It is alleged that Robertson's programming options have been curtailed because she has not had access to a qualified interpreter. She was removed from a drug counseling program at Groveland when the correctional staff realized that she could not follow the group discussions, and she is now being denied access to such a program at Bedford Hills for the same reason. Robertson also contends that the fact that she is not participating in a drug counseling program may be used against her in determining her parole eligibility.

*Prior Proceedings*

In the Opinion, this Court dismissed the personal claims of the named Plaintiff, Clarkson, as moot but granted Wahn's motion to intervene. The motion of other proposed plaintiff-intervenors, all male inmates in the DOCS system, was denied at that time, with leave granted to renew the motion. The Plaintiffs' motion to join three additional party Defendants was granted, while their motion to certify the proposed class was denied, with leave granted to renew the motion as well. One of the Defendants moved for summary judgment or, in the alternative, to transfer the case to the Northern District of New York. Those motions were also denied.

The Plaintiffs and Intervenors now take up where the prior plaintiffs and proposed plaintiff-intervenors left off as they move to intervene, to add a new party defendant, to amend the class complaint to include an ADA claim, and to renew the previous motion for class certification. The Plaintiffs and Intervenors filed the present Notice of Motion on May 28, 1992. Oral argument was heard on October 21, 1992, and the motions were considered fully submitted as of that date.

DISCUSSION

### I. Intervention

#### A. *Legal Standard*

 As was the case with the previous motions decided in the Opinion, the Intervenors presently before this Court seek to intervene pursuant to Rule 24(b)(2), Fed. R.Civ.P. The Rule provides that "[u]pon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common." The Rule is to be construed liberally, *see Davis v. Smith*, 431 F.Supp. 1206, 1209 (S.D.N.Y.1977), *aff'd*, 607 F.2d 535 (2d Cir. 1978), and it does not require an identity of facts, *see Swift v. Toia*, 450 F.Supp. 983, 990 (S.D.N.Y.1978), *aff'd sub nom. Swift v. Blum*, 598 F.2d 312 (2d Cir.1979), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980). Rule 24(b)(2) is satisfied when, "despite factual differences between the parties, a common question of law is involved." *Davis*, 431 F.Supp. at 1209; *see Brooks v. Flagg Brothers, Inc.*, 63 F.R.D. 409, 412–14 (S.D.N.Y.1974). Ultimately, whether to allow a party to intervene is within the discretion of the district court. *See United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978);

*Cook v. Pan American World Airways, Inc.*, 636 F.Supp. 693, 698 (S.D.N.Y.1986).

This litigation still is in its early stages, so that the Intervenors' motion is timely. The critical issue is which of the Intervenors, if any, have potential claims with questions of law or fact in common with the presently named Plaintiffs.

### B. *The Intervenors' Allegations*

The record on this motion indicates that the Intervenors present the same core of operative facts as do the named Plaintiffs. Each plaintiff is a deaf or hearing-impaired inmate in a DOCS facility, and each requires services and assistance from the facility to participate in prison programs and activities. However, none of the DOCS' facilities where the Intervenors are incarcerated has procedures or mechanisms in place to accommodate their needs.

The Intervenors have been classified by DOCS as inmates with hearing impairments. For male inmates, DOCS has a centralized intake/classification system in which deaf and hearing-impaired inmates are identified and categorized. An inmate is identified as hearing disabled only after a medical determination of that inmate's condition. While there is no central intake/classification system for female inmates, Robertson's name was provided by the Defendants after an initial survey of deaf and hearing-impaired women in DOCS facilities.

The Intervenors also raise the same legal claims against the Defendants as do the named Plaintiffs. Specifically, each Proposed Plaintiff alleges that DOCS' policies and practices discriminate against deaf and hearing-impaired inmates by denying them the rights and privileges accorded to non-disabled inmates, solely on the basis of their disability. It is contended that this discrimination violates § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as amended, and regulations promulgated thereunder; several provisions of the United States Constitution, including the Eighth Amendment protection against cruel and unusual punishment, U.S. Const. amend. VIII; the Ninth and Fourteenth amendments' right to privacy and confidential medical decision-making, U.S. Const. amends. IX, XIV, § 1; and the due process and equal protection clauses of the fourteenth amendment, U.S. Const. amend. XIV, § 1; and 42 U.S.C. § 1983. These claims "are virtually identical to those of the named plaintiffs and there are, therefore, common questions of law and fact." *Rivers v. Califano*, 86 F.R.D. 41, 44 (S.D.N.Y.1980). Thus, the motion to intervene is granted on these grounds as to Intervenors Brock and Robertson.

■ Before the motion can be decided regarding the intervention of Powell and Harrison, their respective situations and the allegations of the Intervenors' Complaint require further analysis. The status of these two inmates is considered in turn below.

### 1. Powell

As was noted in the Opinion, SDU inmates were explicitly omitted from the proposed class definition in the Original Complaint and the prior proposed intervenors' Complaint because they presumably would receive the relief requested in this action in the SDU. *See* 783 F.Supp. at 795. For this reason, those motions of the proposed plaintiffs who were already assigned to the SDU to intervene in this action were denied as on the ground that they did not have a question of law or fact in common with the named Plaintiffs at that time. *See* id. *at 796.*

In the Opinion, the Court noted the Plaintiffs' claim that DOCS was playing a "shell game" with the possible plaintiffs to this action in an attempt to moot their claims. *See id.* However, because the particulars of the "shell game" had not been alleged in either Original Complaint or the prior proposed intervenors' Complaint on the previous motion, and evidence of it in the present record was lacking, leave was granted to amend the Complaint to include such allegations and to move again for intervention upon a more definite showing. *See id.* The present Intervenors do include such allegations their Complaint and have made

a more definite showing on this motion. *See* Intervenors' Compl. ¶¶ 16 & 97.

Additionally, the Plaintiffs and Intervenors have modified the class definition to exclude from the class all issues regarding the conditions in the SDU but assert the right of residents of the SDU to be class members for purposes of challenging the conditions in non-SDU facilities. *See id.* at ¶ 11. Thus, deaf and hearing-impaired inmates with relevant experience in the non-SDU facilities can continue to act on behalf of the class even if the Defendants transfer them to the SDU or subsequently transfer them out of the SDU. Against this background of the allegations regarding the Defendants' use of their transfer power to render the Plaintiffs' claims moot, this modification in the class definition is appropriate.

Although it is alleged that Powell is presently in Eastern's SDU, because of the new allegations in the Intervenors' Complaint regarding DOCS' use of its transfer power to affect the viability of this action and the uncertainty surrounding the question of Powell's precise location within the DOCS' system, Powell is a proper party to this action. Therefore, Powell's motion to intervene in this action is granted.

#### 2. Harrison

Harrison is the only Intervenor whose intervention is explicitly objected to by the Defendants. This objection is based on the claim that Harrison has refused to be reassigned to the SDU where he would have access to the kinds of services and facilities he is now asking for as relief in the Intervenors' Complaint. However, as Harrison correctly points out, the Defendants failed to mention that his refusal arose out of concern for his own safety at Eastern. Furthermore, Harrison has indicated his willingness to be transferred to the SDU if his safety there can be assured.

The final and most significant document in the record before this Court on Harrison's status within the DOCS system is DOCS' own report and recommendation regarding his assignment to a facility other than the SDU. This recommendation was based on considerations other than his alleged unwillingness to return there. DOCS' Senior Counselor, Susan Kinney, concluded that:

> Although Harrison's needs could best be met within the East Unit for the Sensorially Disabled, in view of his difficulties dealing with other deaf inmates and his prior problems within the [SDU] setting, it is recommended that he be placed in an alternate maximum security setting.

Sabel Decl., Ex. A.

The Defendants' objection to Harrison's intervention can be characterized as having its source in the fact that DOCS has no mechanism to accommodate Harrison's disability in the SDU or at any other facility. As the Intervenors correctly contend, it is precisely this reason that supports the inclusion of Harrison in this action for the full and fair adjudication of the issues in the case. *See Brennan,* 579 F.2d at 191–92; *Ellender v. Schweiker,* 550 F.Supp. 1348, 1360 (S.D.N.Y.1982); *United States v. Columbia Pictures Indus., Inc.,* 88 F.R.D. 186, 189 (S.D.N.Y.1980).

Again, in light of the expanded allegations in the Intervenors' Complaint regarding the Defendants' transfer power and DOCS' own evaluation of Harrison's reassignment to the SDU, Harrison is an appropriate plaintiff in this action. Therefore, Harrison's motion to intervene in this action is granted.

### II. Joinder

The Plaintiffs and Intervenors seek to join Dalsheim and Senkowski, superintendents of DOCS' Downstate and Clinton facilities, respectively, as additional defendants pursuant to Rule 19's provisions regarding the joinder of a necessary party or Rule 20's permissive joinder provisions. *See* Fed.R.Civ.P., Rules 19 & 20. Rule 20(a) provides that:

> All persons … may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise

in the action. A ... defendant need not be interested in obtaining or defending against all the relief demanded.

Fed.R.Civ.P. 20(a).

For the reasons set forth in the Opinion granting the Plaintiffs' prior motion in which Superintendent Gladwin of the Taconic Correctional Facility was joined as a Defendant, the Court finds that a sufficient nexus exists between the activities of Dalsheim and Senkowski, on the one hand, and the relief sought by the Intervenors, on the other, to justify adding them as Defendants under Rule 20(a). *See* 783 F.Supp. at 797; *see also Vulcan Soc'y of Westchester County v. Fire Dep't of White Plains,* 82 F.R.D. 379, 388–89 (S.D.N.Y.1979). Therefore, the Intervenors' motion to join them as additional Defendants is granted.

### III. Class Certification

■ The Plaintiffs and Intervenors also seek an order pursuant to Rule 23, Fed. R.Civ.P., certifying this action as a class action on behalf of all similarly situated inmates in the DOCS system not in the SDU. Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(b). If these prerequisites are not met, an action may not be maintained as a class action.

The Court considered and denied Plaintiff Wahn's previous motion to certify this action as a class action with leave to renew in the future. *See Clarkson,* 783 F.Supp. at 797–99. There, the Court noted the gen-

eral appropriateness of the class action device in an action of this nature:

> The class action device is particularly well-suited in actions brought by prisoners due to the "fluid composition" of the prison population. *Dean v. Coughlin,* 107 F.R.D. 331, 332 (S.D.N.Y.1985). Prisoners frequently come and go from institutions for a variety of reasons. Veteran prisoners are released or transferred, while new prisoners arrive every day. Nevertheless, the underlying claims tend to remain. *Id.* at 332–33. Class actions therefore generally tend to be the norm in actions such as this. *See Jones v. Smith,* 784 F.2d 149, 151 (2d Cir.1986); *see also Loper v. New York City Police Department,* 135 F.R.D. 81, 83 (S.D.N.Y.1991).

*Id.* at 797.

However, the Court denied Plaintiff Wahn's motion for class-action certification on the grounds that her proposed definition of the class was defective, that the claims of the proposed male class members were rendered moot by the transfer of those inmates to the SDU by the Defendants,[6] and that the record lacked sufficient evidence regarding the numerosity of deaf or hearing-impaired female inmates. *See id.* at 797–99. Each of these grounds has been addressed by the Intervenors on this present motion, and they have satisfied the requirements of Rule 23 to qualify for certification of this action as a class action.

#### A. *The Proposed Definitions*

In response to the Court's concern regarding the inappropriateness of certifying a class which was defined with such a broad brush so as to blur the inherent distinction in circumstances between male and female inmates in the DOCS system because of the availability of the SDU for the former, *see id.* at 798, the Plaintiffs and Intervenors now move for certification of two sub-classes of deaf and hearing-impaired inmates:

---

**6.** In the case of one male proposed intervenor, his motion to intervene was denied on the ground that he had failed to cooperate with DOCS to diagnose the extent of his hearing loss. This had prevented DOCS from determining whether he was eligible for the SDU. As a result, it was not possible for the Court to determine whether he had either a question of fact or law in common with the Plaintiffs.

(a) all present and future deaf and hearing-impaired male inmates of the New York State Department of Correctional Services who have been, are, or will be discriminated against, solely on the basis of their disability, in receiving the rights and privileges accorded to all other inmates; and

(b) all present and future deaf and hearing-impaired female inmates of the New York State Department of Correctional Services who have been, are, or will be discriminated against, solely on the basis of their disability, in receiving the rights and privileges accorded to all other inmates.

Pls.' Mem. 26; *see* Intervenor Compl. ¶ 11.

As was noted above, the sub-class of male inmates does not include a challenge to the conditions or services provided to deaf and hearing-impaired inmates housed in Eastern's SDU.

### B. *Representation of the Male Sub–Class*

In response to the Court's concern regarding the lack of male inmates qualified to represent the putative sub-class of males adequately, *see Clarkson*, 783 F.Supp. at 798, the Plaintiffs have moved for the intervention of three male inmates, to wit, Brock, Harrison, and Powell, who are deaf, and who have been classified by the Defendants as deaf after they were subjected to medical examinations. These inmates are or have been housed at Downstate before being transferred to permanent facilities. Each complains of the failure to have access to qualified sign language interpreters, equipment, and other necessary services to which they are allegedly entitled under the law. Furthermore, two of the Intervenors, Brock and Harrison, have been informed that they will not be transferred to the SDU.

The Intervenors have also protected the claims of the qualified class members by amending the class definition to clarify that, while conditions at the SDU are outside of the scope of this action, residents of the SDU may represent the class for the purpose of challenging conditions in DOCS facilities other than the SDU.

Therefore, Brock, Harrison, and Powell are in a position to represent adequately the sub-class of male inmates in the DOCS system, and certification of this sub-class is warranted pursuant to the provisions of Rule 23.

### C. *Numerosity*

As the Court noted in the Opinion,

Even though there is no magic minimum number that breathes life into a class, *see Bruce v. Christian*, 113 F.R.D. 554, 556 (S.D.N.Y.1986), and lack of knowledge of the exact number of persons affected is not a bar to certification where the defendants alone have access to such data, *see McNeill v. New York City Housing Authority*, 719 F.Supp. 233, 252 (S.D.N.Y.1989); *Folsom v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y.1980), there must be something within the record from which it can be inferred that a class does exist.

783 F.Supp. at 798.

#### 1. The Female Inmate Sub–Class

The record on Wahn's motion was barren of any facts from which it could be inferred that the proposed class (and in particular, the proposed sub-class of female inmates) existed. For that reason, her motion was denied.

In contrast to the previous record, the record presently before the Court contains the necessary information which gives rise to inference of the existence of the proposed sub-classes. The Plaintiffs and Intervenors have proffered the deposition testimony of James F. Newton ("Newton"), Director of Correctional Mental Health for DOCS, the person responsible for overseeing programs for deaf and hearing-impaired inmates, from whom they sought information regarding the numbers of deaf and hearing-impaired female inmates in DOCS facilities.

The record reveals that DOCS has no computerized intake procedures or centralized classification system for female inmates, nor is there a centralized system to

track the location or special-services requirements for disabled female inmates. As a result, identification of deaf and hearing-impaired inmates and an evaluation of any special services they may require is undertaken on an ad hoc basis by the facility counselor or corrections staff.

From records that are, at best, incomplete, the Defendants calculated that, as of April 1992, there were at least seven deaf or hearing-impaired female inmates in the DOCS system. Given that the problems faced by deaf women in DOCS custody is systemic, that the composition of the prison population is inherently "fluid," and that DOCS itself admits the difficulty it has of identifying and tracking female inmates who are deaf or hearing-impaired, the Court can infer that the proposed sub-class of female inmates does exist. Therefore, although only seven female inmate sub-class members have been identified, this number, when considered against these background factors, is sufficient to satisfy the numerosity requirements of Rule 23. Therefore, the motion to certify this action as a class action on behalf of all similarly situated female inmates belonging to the proposed sub-class within the DOCS system is granted.

### 2. The Male Inmate Sub–Class

Finally, with regard to the numerosity of the male inmate sub-class, DOCS' March 14, 1992 statistical report indicated that there were at least forty-nine male inmates in its custody who may be deaf or hearing impaired. In the Opinion, this Court found that the November 1990 statistical report, showing at least forty-eight deaf and hearing-impaired inmates in the DOCS system, would satisfy the numerosity requirement for the sub-class of male inmates. *See* 783 F.Supp. at 798.

Although the Defendants have made no effort to distinguish the accuracy of the March 1992 report from that of November 1990, they dispute the accuracy of their own report by maintaining that it "is not a reliable indicator of how many inmates in DOCS' custody are actually deaf or hearing impaired." Defs.' Mem. 9. This assertion, however, is contradicted by Newton's testimony that an inmate's name will appear on the classification report as deaf or hearing-impaired only after a medical determination is made that the individual is disabled, and that the classification report is under-inclusive. Thus, there is nothing on this record to cause the Court to reconsider its conclusion on the issue of numerosity with regard to the male inmate sub-class as set forth in the Opinion. Therefore, the motion to certify this action as a class action on behalf of all similarly situated male inmates belonging to the proposed sub-class within the DOCS system is granted.

## IV. The Plaintiffs' ADA Claim

The Intervenors also move for leave to amend the Original Complaint to add a claim under ADA, 42 U.S.C. §§ 12131–32, pursuant to Rule 15(a), Fed.R.Civ.P. Such leave is to be "freely given when justice so requires." *Id.*

The relevant provisions of the ADA became effective January 26, 1992, several months after the Plaintiffs filed the Original Complaint and served the initial motions for intervention and certification of a class. Further, the proof required under the ADA is substantially identical to that required under § 504 of the Rehabilitation Act, 28 C.F.R. §§ 35.103, 36.103. Thus, the inclusion of the proposed ADA claim at this stage in this action would neither work an undue hardship on the Defendants nor violate any principles of justice.

In light of these considerations, it is appropriate to grant the Plaintiffs leave to amend the Original Complaint in the proposed manner, and their motion is granted.

### Conclusion

For the reasons set forth above, the motions of the Plaintiffs and the Intervenors are granted.

It is so ordered.