**Terry DEGRAFINREID, Plaintiff,**

v.

**Thomas RICKS, Superintendent of the Upstate Correctional Facility of the New York State Department of Correctional Services, et al., Defendants.**

**No. 03 Civ. 6645(RWS).**

United States District Court,
S.D. New York.

Feb. 23, 2006.

Koppell, Leavitt, Kerson & Duane, New York, NY (Ira R. Greenberg, of counsel) for Plaintiff.

Honorable Eliot Spitzer, Attorney General of the State of New York, New York, NY (Neil Shevlin, Assistant Attorney General, of counsel), for Defendants.

## OPINION

SWEET, District Judge.

The plaintiff class in *Clarkson v. Coughlin* (the "*Clarkson* Class"), certified by this Court at 145 F.R.D. 339 (S.D.N.Y.1993), seeks to intervene in this case pursuant to Rule 24(b)(2), Fed.R.Civ.P., to address the limited question of whether the Eleventh Amendment provides defendants with immunity from claims for monetary damages brought under Title II of the Americans with Disability Act (hereinafter, the "ADA"), 42 U.S.C. § 12132 *et seq.*, and Section 504 of the Rehabilitation Act (hereinafter, the "Rehabilitation Act"), 29 U.S.C. § 794.

The *Clarkson* Class further moves the Court pursuant to Rules 59(e), 60(b), Fed. R.Civ.P., and Local Rule 6.3 to reconsider, alter or amend its prior decision dated December 6, 2004, in *Degrafinreid v.*

*Ricks,* No. 03 Civ. 6645(RWS), 2004 WL 2793168 (S.D.N.Y. December 6, 2004) (hereinafter, *"Degrafinreid I"* or the "December 6 Opinion"). Specifically, the *Clarkson* Class requests the Court to reconsider its earlier decision in light of the Supreme Court's holding in *Tennessee v. Lane ("Lane"),* 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004).

Finally, Defendants Ralph Bebee ("Bebee"), Edmund Barr ("Barr"), Amy Tousignant ("Tousignant"), George Watersin ("Watersin") and Donna Masterson ("Masterson") (collectively, the "Defendants") move under Rule 12(c), Fed.R.Civ.P., to dismiss the state law negligence cause of action filed by plaintiff Terry Degrafinreid ("Degrafinreid") against the Defendants in their individual capacities, contending that the Court lacks the requisite subject matter jurisdiction as the Defendants are protected from suit by qualified immunity.

For the reasons set forth below, the motion to intervene is granted, the motion to reconsider is granted, and upon reconsideration the motion to dismiss the ADA claims seeking monetary damages is denied. The motion to dismiss the state law negligence claims also is denied.

### The Parties

At the times relevant to the allegations of the complaint, Degrafinreid was a prisoner in the custody of the New York State Department of Correctional Services ("DOCS"). (*See* Compl. at ¶ 1.)

At the times relevant to the allegations of the complaint, Masterson was the ADA Coordinator of DOCS. (*See* Compl. at ¶ 3.) Barr and Bebee were New York State Correction Officers in the employ of DOCS and assigned to Upstate. (*See* Compl. at ¶ 4.) Watersin was a nurse employed by DOCS assigned to Upstate. (*See* Compl. at ¶ 5.) Tousignant was a nurse administrator for DOCS assigned to Upstate. (*See* Compl. at ¶ 6.)

### Prior Proceedings

This action was commenced on September 3, 2003 with the filing of a complaint (the "Complaint"), alleging that on September 10, 2002, Degrafinreid was "viciously attacked" by certain Correction Officers who destroyed his hearing aids. (Compl. at ¶ 12.) The case was referred to this Court as related to *Clarkson v. Coughlin,* No. 91 Civ. 1792, *see generally Clarkson v. Coughlin,* 898 F.Supp. 1019 (S.D.N.Y.1995).

The Complaint contained nine claims, each of which was asserted against all Defendants except as otherwise noted: (1) violations of the ADA and the Rehabilitation Act (*see* Compl. at ¶¶ 22–25); (2) violations of the Prisoner Litigation Reform Act ("PLRA") (*see* Compl. at ¶¶ 26–28); (3) conspiracy to commit cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution (*see* Compl. at ¶¶ 29–31); (4) conspiracy to violate Degrafinreid's civil rights in violation of 42 U.S.C. §§ 1983 and 1985 (*see* Compl. at ¶¶ 32–34); (5) assault (*see* Compl. at ¶¶ 35–37); (6) intentional infliction of emotional distress (*see* Compl. at ¶¶ 38–39); (7) *respondeat superior* liability of Ricks for the intentional torts of the other Defendants (*see* Compl. at ¶¶ 40–42); (8) negligence (*see* Compl. at ¶¶ 43–44); and (9) denial of medical treatment (*see* Compl. at ¶¶ 45–47). Degrafinreid seeks compensatory and exemplary damages with respect to each of the nine claims (*see* Compl. at ¶¶ 25, 28, 31, 34, 37, 39, 42, 44, 47), prospective relief and preliminary and permanent injunctive relief under the PLRA and the ADA (*see* Compl. at ¶ 27; *see also id.* at 9–10), and an order finding Defendants in contempt of the Consent Judgment and Order of June 10, 1996 entered in *Clarkson v. Coughlin,* No. 91 Civ. 1792(RWS)

(the "*Clarkson* Consent Judgment"). (*See* Compl. at 9.)

The December 6 Opinion held that the Defendants in their official capacity were immune under the Eleventh Amendment citing *Davis v. New York*, 316 F.3d 93, 101–02 (2d Cir.2002); that the ADA claim for monetary damage was dismissed citing *Garcia v. S.U.N.Y. Health Services Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir.2001); and that the ADA claim for injunctive relief and the negligence claim against the Defendants in their individual capacity remained.

The motions for intervention and reconsideration were filed and marked fully submitted on February 16, 2005, and the motion to dismiss was marked fully submitted on March 30, 2005.

***Discussion***

**I. *The Motion To Intervene Is Granted***

**A. *The Intervenors***

The *Clarkson* Class is the plaintiff class certified in *Clarkson v. Goord*, which is a class action lawsuit that was brought on behalf of prisoners who are deaf and hearing impaired concerning the scope of reasonable accommodations made available to them for the duration of their confinement. The Class and the Defendants (prison officials) agreed upon the Consent Judgment, which the Court ordered on June 6, 1996. In the Consent Judgment, the Court mandated DOCS to provide reasonable accommodations to deaf and hard of hearing prisoners in all of its prisons pursuant to the ADA and the Rehabilitation Act.

It is undisputed that Degrafinreid is a member of the *Clarkson* class.

**B. *The Standard For Intervention***

Federal Rules of Civil Procedure Rule 24(b) provides, in relevant part, that intervention is permissible "[u]pon timely application ... (2) when an applicant's claim or defense and the main action have a question of law and fact in common." Fed. R.Civ.P. 24(b)(2). Another factor to be considered in determining whether to allow a party to intervene is "whether permitting intervention will assist in developing and resolving the factual and legal disputes in the litigation." *In re Visa Check/Mastermoney Antitrust Litigation*, 190 F.R.D. 309, 312 (E.D.N.Y.2000). The court must consider whether granting permissive intervention under Rule 24(b) "will unduly delay or prejudice the adjudication of the rights" of the existing parties. *In re Holocaust Victim Assets Litigation*, 225 F.3d 191, 202 (2d Cir.2000).

Intervention under this rule is permitted in the discretion of the district court. *See, e.g., H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986). Within this discretion, courts have held that Rule 24(b)(2) is to be liberally construed. *See, e.g., McNeill v. New York City Hous. Auth.*, 719 F.Supp. 233, 250 (S.D.N.Y.1989) (citing *Davis v. Smith*, 431 F.Supp. 1206, 1209 (S.D.N.Y.), aff'd, 607 F.2d 535 (2d Cir.1978)).

**C. *Intervention Is Granted***

The *Clarkson* Class moves to intervene for the limited purpose of addressing whether the Eleventh Amendment bars suit against states for monetary damages under the ADA and the Rehabilitation Act, as sought by Degrafinreid in this case. While the *Clarkson* Class did not assert claims for monetary damages arising under the ADA or the Rehabilitation Act in its suit, the Class argues that it has more than a general interest as to whether claims for monetary damages under the ADA and the Rehabilitation Act can proceed against the state.

Rule 24(b) "plainly dispenses with any requirement that the intervenor shall

have a direct personal or pecuniary interest in the subject of the litigation." *Diamond v. Charles,* 476 U.S. 54, 77, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986). Although a putative intervenor need not have a direct interest in the subject of the litigation, more than a general interest is required. In deciding motions to intervene, federal courts have recognized that no two individuals will present identical facts and have refused to allow minor distinctions to preclude intervention. Even where factual distinctions exist, courts have permitted intervention where the same legal issue is presented. *Brooks v. Flagg Bros.,* 63 F.R.D. 409, 414 (S.D.N.Y.1974).

■ *Clarkson* Class members, such as Degrafinreid, who bring claims seeking contempt of the Consent Judgment and interrelated claims for monetary damages under the disability statutes, have a substantial interest in the outcome of the legal question posed by the Class as to whether the Defendants are entitled to Eleventh Amendment immunity from claims seeking monetary damages under the ADA and the Rehabilitation Act. The sovereign immunity question at issue here can reasonably be expected to arise in other cases that could affect the interests of others in the *Clarkson* Class. As such, the *Clarkson* Class shares a common legal interest with Degrafinreid in the limited context of the proposed motion to intervene and for this purpose has adopted Degrafinreid's Complaint.

Furthermore, the motion to intervene was made in a timely manner, as is required by Rule 24(b). Although the *Clarkson* Class moved to intervene after the Court had issued its December 6 Opinion, the Class moved to intervene in order to further move the Court to reconsider its December 6, 2004 Opinion in light of *Tennessee v. Lane,* 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), a Supreme

Court case that neither Degrafinreid nor the Defendants had briefed to the Court prior to its December 6, 2004 Opinion.

Finally, the Defendants will not be prejudiced if the motion to intervene is granted. Since Degrafinreid's ADA claim for injunctive relief as well as his state law negligence claim for damages survived the motion to dismiss, *see Degrafinreid I,* the discovery that will proceed on the remaining claims is substantially similar to the discovery that would be taken on the claims for monetary damages under the ADA and the Rehabilitation Act. Thus, granting the *Clarkson* Class's motion to intervene will not delay the litigation of this case or prejudice the Defendants.

For the foregoing reasons, the motion to intervene is granted.

## II. *The Motion To Reconsider Is Granted*

The *Clarkson* Class has moved the Court to reconsider, alter or amend its earlier dismissal of Degrafinreid's claims for damages under the disability statutes, arguing that the Court's December 6 Opinion overlooked the implications of *Lane* in relying upon *Garcia v. SUNY Health Sciences Ctr. of Brooklyn,* 280 F.3d 98 (2d Cir.2001).

### A. *The Standard for Reconsideration*

A motion to reconsider "is to be treated as a Rule 59(e) motion if filed within 10 days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter." *United States v. Clark,* 984 F.2d 31, 32 (2d Cir.1993).

Local Civil Rule 6.3 also governs motions for reconsideration in this district and provides, in pertinent part, as follows:

A notice of motion for reconsideration or re-argument of a court order determining a motion shall be served within ten

(10) days after the entry of the court's determination of the original motion, or in the case of a court order resulting in a judgment, within ten (10) days after the entry of judgment. There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked ...

Local Civ. R. 6.3.

■ Motions to alter or amend judgments under Rule 59(e) and for reconsideration under Local Civil Rule 6.3 are evaluated under the same standard. *See Word v. Croce*, No. 01 Civ. 9614(LTS), 2004 WL 434038, at *2 (S.D.N.Y. Mar.9, 2004); *Williams v. New York City Dep't of Corr.*, 219 F.R.D. 78, 83 (S.D.N.Y.2003); *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y.1999). On a motion made pursuant to either rule, " 'the moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision.' " *Word*, 2004 WL 434038, at *2 (quoting *Parrish v. Sollecito*, 253 F.Supp.2d 713, 715 (S.D.N.Y.2003)); *see also Williams*, 219 F.R.D. at 83.

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.' " *Montanile v. Nat'l Broadcasting Co.*, 216 F.Supp.2d 341, 342 (S.D.N.Y.2002) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F.Supp.2d 613, 614 (S.D.N.Y.2000)).

## B. *Reconsideration Is Granted*

■ In its motion to reconsider, the *Clarkson* Class has contended that the Court's dismissal of Degrafinreid's claims for monetary damages under the ADA is inconsistent with the Supreme Court's holding in *Lane*.[1] The Defendants concede that *Lane* is controlling authority with respect to the scope of immunity afforded states under the Eleventh Amendment but contend that the Court's previous dismissal of Degrafinreid's claims for monetary damages under the disability statutes should be sustained nonetheless.

In *Lane*, the Supreme Court considered whether Congress validly abrogated the Eleventh Amendment when enacting Title II of the ADA, specifically examining Title II within the context of a state's responsibility to provide disabled persons with access to courts. Although the plaintiffs in *Lane* were not prisoners, lower courts have relied on *Lane* analysis to determine the scope of sovereign immunity afforded states under Title II of the ADA in the context of suits brought by disabled prisoners alleging discrimination. *See Miller v. King*, 384 F.3d 1248 (11th Cir.2004); *see Cochran v. Pinchak*, 401 F.3d 184 (3rd Cir.2005), *vacated on other grounds by Cochran v. Pinchak*, 412 F.3d 500 (3rd Cir.2005).

According to *Lane*, if a suit brought under Title II implicates a fundamental right, then, to determine whether either a state entity or individuals acting in an official capacity can be held liable for monetary damages, a court must apply the three part test articulated in *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). The holding in *Lane* superseded this Circuit's rule announced in *Garcia*, which had required

1. When the parties briefed this motion, the Supreme Court had not taken under review, much less decided, *United States v. Georgia*, — U.S. —, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006), which extends *Lane's* analysis to claims brought for monetary damages by disabled inmates under Title II of the ADA in the state prison context.

that the plaintiff establish that the alleged Title II violation was motivated by either "discriminatory animus or ill will." *Id.* at 112. *See Roe v. Johnson,* 334 F.Supp.2d 415 (S.D.N.Y.2004). However, *Lane* did not disturb the tenet that "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia* at 107.

Recently, the Supreme Court extended *Lane's* analysis to a suit alleging violations of the Eighth Amendment brought by a disabled inmate for monetary damages against the State under Title II of the ADA. *See United States v. Georgia,* —— U.S. ——, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006). Refining the *Lane* test, the Court in *Georgia* concluded that Title II of the ADA validly abrogated state sovereign immunity to create a private right of action for money damages against the State for conduct that "actually violates" the Fourteenth Amendment. *Id.* at 882. Since Degrafinreid, like the plaintiff in *Georgia,* alleges violations of the Eighth Amendment, which is incorporated by the Fourteenth Amendment, *see Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 463, 67 S.Ct. 374, 91 L.Ed. 422 (1947), as well as violations of the Equal Protection Clause, also incorporated by the Fourteenth Amendment, the standard announced in *Georgia,* rather than the three part *Boerne* test articulated in *Lane,* applies to the case at hand.

The *Clarkson* Class contends that Degrafinreid's allegation that he was denied reasonable accommodation for his disability because DOCS officials failed to provide him with a working hearing aid and batteries, (*see* Compl. at ¶ 23), amounts to a violation of an array of fundamental rights, including the Equal Protection Clause's prohibition of arbitrary treatment based on irrational stereotypes or hostility and the Eighth Amendment's protection against cruel and unusual punishment, thereby implicating the Fourteenth Amendment and triggering access to monetary damages under *Georgia.* The Defendants contest this characterization, contending that Degrafinreid's alleged denial of a working hearing aid and batteries does not constitute a violation of any fundamental right or the Fourteenth Amendment, thereby prohibiting Degrafinreid's recovery of money damages from the State.

The parties agree that *Lane* was not previously briefed or discussed before this Court. The parties also agree that, as to Title II's validity under the Fourteenth Amendment, the Supreme Court's analysis in *Lane* supersedes the Second Circuit's decision in *Garcia,* relied upon by this Court in its December 6 Opinion dismissing plaintiff's claims under the ADA. Although the parties have not addressed the applicability of *Georgia* to this case, as it had not been taken under review or decided by the Supreme Court at the time this motion was briefed, *Georgia's* analysis supplants *Lane's* in this instance. Upon reconsideration and in light of the parties briefings in *Lane* and the Supreme Court's recent decision in *Georgia,* a renewed analysis of Degrafinreid's claim for monetary damages under Title II is warranted.

### C. *Upon Reconsideration The Motion To Dismiss The ADA Claim Is Denied*

#### 1. *ADA Claims May Be Brought Against The State*

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.

§ 12132. Likewise, § 504 of the Rehab. Act provided that:

[n]o otherwise qualified individual with a disability ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). *See Smith v. University of the State of New York,* 1997 WL 800882, *7, 1997 U.S. Dist. LEXIS 20782, *22 (W.D.N.Y. Dec. 31, 1997) ("The legislative history of the ADA indicates that the discriminatory practices of public entities, and not individuals, are the target of Title II.").

At the outset the parties have presented the issue of the capacity in which the Defendants have been sued. According to the Defendants, the Complaint asserts claims against individuals which are not authorized by the ADA and the Rehabilitation Act. The *Clarkson* Class has countered by citing *Henrietta D. v. Bloomberg,* 331 F.3d 261, 288 (2d Cir.2003), arguing that these statutes permit claims against state officials in their official capacities. *See also Doe v. Goord,* No. 04 Civ. 0570 (GBD/AJP), 2004 WL 2829876, *18 (S.D.N.Y. Dec.10, 2004).

■ While the disability statutes do not permit claims against officials in their individual capacities, suits against individuals in their official capacities are condoned. In *Garcia v. SUNY Health Sciences Center of Brooklyn,* 280 F.3d 98, 107 (2d Cir. 2001), only the individual capacity claims were dismissed as unauthorized by statute; both the official capacity claims and those against the state agency were addressed under the Eleventh Amendment. *See Garcia,* 280 F.3d at 107. ("Insofar as [plaintiff] is suing the individual defendants in their official capacities, he is seeking damages from New York, and the Eleventh Amendment therefore shields them to the same extent it shields [the state entity.]"); *see also Johnson v. Goord,* No. 01 Civ. 9587(PKC), 2004 WL 2199500, *4 (S.D.N.Y. Sept.29, 2004) (holding that suits against state officials in their official capacity are the same as suits against the state and that plaintiff's suit could not proceed against either the state entity or the individuals in their official capacity because of sovereign immunity).

■ Since the ADA permits official capacity suits, Degrafinreid can pierce Defendant's claim of state sovereign immunity and recover money damages under Title II, provided he satisfies the standard set forth in *Georgia.* Specifically, taking all of the facts in the Complaint as true, as is required on a motion to dismiss, it must be determined "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia* at 883. Should the allegations setting forth Defendant's Title II violations encompass violations of the Fourteenth Amendment, satisfying the first two inquiries under *Georgia,* then the Eleventh Amendment does not shield Defendants from Degrafinreid's official-capacity suit for monetary damages under the ADA. *Id.*

### 2. *Degrafinreid Has Alleged an Eighth Amendment Violation*

■ The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. To

establish an Eighth Amendment claim, Degrafinreid must prove "deliberate indifference to [his] serious medical needs." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

The deliberate indifference standard includes both an objective and subjective component. *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). In objective terms, the alleged deprivation must be sufficiently serious. *Hathaway,* 37 F.3d at 66. A serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance,* 143 F.3d at 701–02 (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373–74 (7th Cir.1997)). "Factors that have been considered include 'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Id.* (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992)). *See Johnson v. Goord,* 2004 WL 2199500 at *5.

Subjectively, the defendant "must act with a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. An official acts with the requisite degree of deliberate indifference when that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw that inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). *See Burgess v. Goord,* No. 98 Civ.2077(SAS), 1999 WL 33458, *8–*10 (S.D.N.Y. Jan.26, 1999).

Further, "it's the particular risk of harm faced by a prisoner due to challenged deprivation of care, rather than the prisoner's underlying medical condition considered in the abstract, that is relevant for Eighth Amendment purposes." *Smith v. Carpenter,* 316 F.3d 178, 186 (2d Cir.2003).

Degrafinreid's allegations satisfy both the objective and subjective prongs of the deliberate indifference test. Objectively, the ability to hear is a basic human need affecting daily activity and sufficiently serious to warrant treatment by physicians. It is undisputed that Degrafinreid received medical treatment while in custody for his loss of hearing; he was supplied with hearing aids and batteries, a clear indication of the seriousness of his condition and the importance of treating it. Degrafinreid's ability to hear is critical not only in terms of enjoyment and good health but also, and perhaps most importantly, in terms of safety and security—particularly so in the controlled environment of a prison. Indeed, the *Clarkson* Consent Judgment was crafted specifically to meet such needs.

Subjectively, it is alleged that the Defendants did act with a sufficiently culpable state of mind, that Defendants knew of Degrafinreid's medical condition, and that he had been receiving treatment over a prolonged period of time for his condition through DOCS. Furthermore, Degrafinreid alleges that Officers Barr and Beebee reasonably would have known Degrafinreid to be a deaf inmate and reasonably would have known that Degrafinreid's hearing aid was essential to the treatment of his medical condition when they confiscated and destroyed his hearing aid during the search of his cell on September 10, 2003. Assuming *arguendo* that the cell search was a contraband search, as Defendants insist, Defendants still displayed de-

liberate indifference in confiscating and destroying Degrafinreid's hearing aid, as it seems to contradict reasonable belief that a hearing aid in a deaf inmate's cell could be construed as contraband which would demand destruction.

Finally, given that it is alleged that Defendants knew of Degrafinreid's medical condition, the seriousness of his condition, his need for treatment, as well as the confiscation and destruction of his hearing aid (since Degrafinreid filed the necessary grievances), the fourteen month delay in replacing Degrafinreid's hearing aid further demonstrates Defendants' deliberate indifference to treating Degrafinreid's serious medical condition. In objective terms, Defendants knew of Degrafinreid's medical condition and the past treatment he had been administered while in custody, and they knew that he was being deprived of his treatment after the September 10, 2003 search—and yet nothing changed in his medical condition to justify any interruption of his treatment as it had been provided to him in the past. In subjective terms, Defendants demonstrated a culpable state of mind in failing to provide Degrafinreid with another hearing aid in a reasonable amount of time after his hearing aid had been confiscated and destroyed by Officers Barr and Beebee. Again, assuming *arguendo* that Defendants did confiscate and destroy Degrafinreid's hearing aid as part of a contraband search, once they had been put on notice of the deprivation Degrafinreid was suffering as a result of the loss of his hearing aid (which they had, since Degrafinreid adhered to the grievance process), a replacement hearing aid should have been provided. It challenges reasonable belief that the fourteen month delay in replacing it was warranted.

As such, Degrafinreid has stated a claim for an Eighth Amendment violation in satisfaction of the objective and subjective requirements of the deliberate indifference standard. Previously, in this Court's December 6 Opinion, Degrafinreid's Eighth Amendment claim for monetary damages had been dismissed, citing *Davis v. New York*, 316 F.3d 93 (2d Cir.2002), as barred by state sovereign immunity. *See Degrafinreid I*, 2004 WL 2793168 at *5. While his claim against individuals in their official capacities has been dismissed, his Eighth Amendment claim against Defendants in their individual capacities remains. *See Davis*, 316 F.3d at 101–02; *Dufort v. Burgos*, No. 04 Civ. 4940 (FB/LB), 2005 WL 2660384 (E.D.N.Y. Oct.18, 2005).

Degrafinreid's allegations set forth conduct that violates Title II of the ADA and the Eighth Amendment as it is incorporated against the states through the Fourteenth Amendment. Since Degrafinreid has alleged an Eighth Amendment violation, Title II of the ADA, as interpreted by the Supreme Court in *Georgia*, provides for a private right of action against the State for monetary damages. As such, Defendants do not benefit from the Eleventh Amendment's grant of state sovereign immunity and their motion to dismiss Degrafinreid's ADA claim for monetary damages is denied.

### D. *The State Has Waived Its Immunity As To The Rehabilitation Act Claims*

According to the *Clarkson* Class, the court also overlooked the Defendants' waiver of sovereign immunity from claims arising under the Rehabilitation Act. Although the analysis of abrogation is the same with respect to the ADA and the Rehabilitation Act, *see Garcia*, 280 F.3d at 113, the Rehabilitation Act presents a separate question of waiver of sovereign immunity. *See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 686–7, 119 S.Ct.

2219, 144 L.Ed.2d 605 (1999). Because the Rehabilitation Act was enacted pursuant to the Spending Clause of Article I, Congress can require states to waive their sovereign immunity as a condition of accepting federal funds.[2]

■ The Second Circuit, as well as all other intermediate federal courts, has held that Congress intended states' acceptance of federal funds to constitute waiver of their Eleventh Amendment immunity as to claims under the Rehabilitation Act. *See Garcia,* 280 F.3d at 113, citing 42 U.S.C. § 2000d–7; *Barbour v. Washington Metropolitan Area Transit Authority,* 374 F.3d 1161, 1164 (D.C.Cir.2004) (collecting cases).

Our Circuit in *Garcia* added an additional criterion: that "the state, in accepting the funds, believed it was actually relinquishing its right to sovereign immunity." *Garcia,* 280 F.3d at 115, n. 5. In *Garcia,* the court found that during the period from 1993 through 1995, New York did not waive its sovereign immunity when it accepted federal funds because during that time period (when the alleged discrimination occurred), the ADA was reasonably understood to abrogate the state's sovereign immunity. Because New York thought that sovereign immunity under the disability statutes was already lost, *Garcia* reasoned, it could not have knowingly waived its immunity from suit by accepting federal funds appropriated under the Spending Clause. *See id.* at 114–15. Although the *Garcia* court saw no reason for the state to believe that the ADA's abrogation was invalid in 1995, it acknowledged New York's acceptance of federal funds at a later date "might properly reveal a knowing relinquishment of sovereign immunity." *Id.* at 113 n. 4.

On February 21, 2001, the Supreme Court decided *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), holding states to be immune from damage suits under Title I of the ADA and calling into question the viability of Title II. Courts have held that after *Garrett,* New York's continued acceptance of federal funds necessarily constituted a valid waiver of sovereign immunity because New York could no longer rely on a belief that Title II clearly constituted a valid abrogation of sovereign immunity. *See, e.g., Sacca v. Buffalo State College,* No. 01–CV–00881A (SR), 2004 WL 1083243, at *5 (W.D.N.Y. Feb.13, 2004); *Wasser v. New York State Office of Vocational & Educ. Servs. for Individuals with Disabilities,* No. 01–CV–6788 (DGT), 2003 WL 22284576 at *10 (E.D.N.Y. Sept.30, 2003); *Smith v. State Univ. of New York,* No. 1:00–CV–1454 (FJS/RFT), 2003 WL 1937208, at *7 (N.D.N.Y. April 23, 2003); *Kilcullen v. New York State Dept. of Labor,* No. 97–CV–484 (LEK/RFT), 2003 WL 1220875, at *3 (N.D.N.Y. March 13, 2003).

Under the logic of *Garcia* and the cases interpreting its decision on waiver, New York's continued acceptance of federal funds on behalf of DOCS constitutes a waiver of sovereign immunity as to all of plaintiff's Rehabilitation Act claims. *See Doe,* 2004 WL 2829876 at *16. The Defendants have not met the *Clarkson* Class's contention in this regard.

As Judge Peck notes in *Doe,* while it is generally agreed that state agencies, including DOCS, have waived sovereign immunity under § 504 of the Rehabilitation Act through their continued acceptance of federal funds,

---

**2.** DOCS accepts funding from the federal government. *See, e.g., Doe,* 2004 WL 2829876 at *16.

district court decisions in this Circuit disagree as to whether New York effectively waived its sovereign immunity only by accepting federal funds after *Garcia* was decided, on September 25, 2001, or whether the waiver occurred as early as February 25, 2001, when the U.S. Supreme Court handed down its decision in *Bd. of Trustees of the University of Alabama v. Garrett.*

*Id.* at *16 (collecting cases). Since, according to the Complaint, the alleged conduct occurred on September 10, 2002, postdating both decisions in *Garcia* and *Garrett,* the question of the exact date upon which the State's waiver of immunity began is not relevant.

For the foregoing reasons, the State waived its immunity from suit under the Rehabilitation Act at the time of the alleged incident.

### III. *The Motion To Dismiss Is Denied*

Defendants move pursuant to Rule 12(c), Fed.R.Civ.P., for a judgment on the pleadings with respect to plaintiff's state law negligence claims against Defendants in their individual capacities. Asserting that the Defendants cannot be held liable in their individual capacities pursuant to New York State Corrections Law § 24 (hereinafter, "Corrections Law § 24"), Defendants argue that plaintiff's state law negligence claims must be dismissed.

#### A. *The 12(c) Standard*

Defendants move pursuant to 12(c), Fed. R.Civ.P., for a judgment on the pleadings. Since Defendants filed an answer to the Complaint on December 22, 2004, the pleadings stage has closed and Defendants cannot move for dismissal under 12(b), Fed.R.Civ.P. However, "the standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a

claim." *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001). *See Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994); *Ad–Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch Coll.,* 835 F.2d 980, 982 (2d Cir.1987). In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. *See Irish Lesbian & Gay Org.,* 143 F.3d at 644. The court will not dismiss the case unless it is satisfied that the complaint cannot state any set of facts that would entitle plaintiff to relief. *See Sheppard,* 18 F.3d at 150.

All allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the non-moving party. *D'Alessio v. New York Stock Exchange, Inc.,* 258 F.3d 93, 99 (2d Cir. 2001). In deciding the motion, the Court can consider documents referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of or relied on in bringing the suit. *Hughes v. Lillian Goldman Family, L.L.C.,* 153 F.Supp.2d 435, 439 (S.D.N.Y. 2001).

#### B. *The Motion to Dismiss Is Denied*

■ Section 24 of the Corrections Law provides in pertinent part:

No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department [of corrections], in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

Corrections Law § 24(1). In adopting the statute, the New York State Legislature recognized that corrections officers should be permitted to "perform the demanding task of maintaining safety and security within correctional facilities 'undeterred by the fear of personal liability and vexatious suits, which could substantially impair the effective performance of a discretionary function.'" *Ierardi v. Sisco,* 119 F.3d 183, 187 (2d Cir.1997) (*quoting Arteaga v. State,* 72 N.Y.2d 212, 222, 532 N.Y.S.2d 57, 527 N.E.2d 1194 (1988)). *See, e.g., Baker v. Coughlin,* 77 F.3d 12, 14–15 (2d Cir. 1996); *Cepeda v. Coughlin,* 128 A.D.2d 995, 996–97, 513 N.Y.S.2d 528, 530 (3d Dep't 1987).

Defendants argue that Barr and Beebee are entitled to qualified immunity. Public officials are "immune from liability for money damages in suits brought against them in their individual capacities if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Anthony v. City of New York,* 339 F.3d 129, 137 (2d Cir.2003) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Even where ... a plaintiff's federal rights are well-established, qualified immunity is still available to an official if it was 'objectively reasonable for the public official to believe that his acts did not violate those rights.'" *Hathaway,* 37 F.3d at 67 (quoting *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991)); *see also Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). It "'protects all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Defendants argue that it was objectively reasonable for Barr and Beebee to believe that they were not violating Degrafinreid's Eighth Amendment right when they confiscated and destroyed his hearing aid. However, because it has been found that Degrafinreid's allegations state a claim for deliberate indifference against these defendants, it cannot be determined as a matter of law that it was objectively reasonable for Barr and Beebee to believe that their conduct did not violate Degrafinreid's right to be free from cruel and unusual punishment. In other words, "[a]ssuming that [Barr and Beebee] [were] deliberately indifferent to [plaintiff's] serious medical needs, [they] [are] not entitled to qualified immunity because it would not be objectively reasonable for them to believe [their] conduct did not violate [Degrafinreid's] rights." *Hathaway,* 37 F.3d at 69.

As such, Defendants are not entitled to qualified immunity with respect to Degrafinreid's state law negligence claims, and the motion to dismiss these claims is denied.

***Conclusion***

For the reasons set forth above, the motion to intervene, submitted by the *Clarkson* Class, is granted; the motion to reconsider is granted and, upon reconsideration, the motion to dismiss Degrafinreid's claims for monetary damages under the disability statutes is denied. The motion to dismiss Degrafinreid's state law negligence claims pursuant to Rule 12(c), Fed.R.Civ.P., also is denied.

As requested by Degrafinreid, a pretrial conference to determine a discovery schedule is set for March 15, 2006 at 4:30 p.m.

It is so ordered.